

# EXHIBIT A



Law Offices of
**Hans W. Herb**

*Via Certified Mailing - Return Receipt*

April 30, 2015

Germon Medeiros
Sonoma Soil Builders, LLC.
3245 Cobblestone Dr.
Santa Rosa CA 95404

Re:     **SUPPLEMENTAL**
         **Notice of Violations and Intent to File Suit Under the federal Water Pollution Control Act**
         **("Clean Water Act")**

Dear Owners, Operators and/or Facility Managers:

**NOTICE**

This Notice is provided on behalf of California Environmental Protection Association ("CEPA") in regard to violations of the Clean Water Act ("CWA" or "Act") 33 U.S.C. § 1251 *et seq.,* that CEPA believes are occurring at the Sonoma Soil Builders, LLC facility located at 5900 Pruitt Avenue in Windsor, California. Notice is being sent to you as the responsible owners, officers, operators or managers of these properties and facilities. This Notice addresses the violations of the CWA, including violation of the terms of the General California Industrial Storm Water Permit and unlawful discharge of pollutants from the Sonoma Soil Builders, LLC facility in Windsor into Pool Creek, a tributary of the Russian River (which is CWA § 303(d) listed as impaired for sediment, temperature, and bacteria).

This Notice amends and supplements a previous Notice which was served on Sonoma Soil Builders, LLC on June 30, 2014.

CWA § 505(b) requires that 60 days prior to the initiation of a civil action under CWA § 505(a), 33 U.S.C. § 1365(a), a citizen must give notice of the intent to sue to the alleged violator, the Environmental Protection Agency ("EPA") and the State in which the violations occur.

As required by the CWA, this Notice provides notification of the violations that have occurred, and continue to occur at the Sonoma Soil Builders, LLC facility. Consequently, Sonoma Soil Builders, LLC (the "Discharger") is placed on formal notice by CEPA that after the expiration of sixty (60) days from the date of this Notice, CEPA will be entitled to bring suit in the United States District Court against the Discharger for continuing violations of an effluent standard or limitation, National Pollutant

Discharge Elimination System ("NPDES") permit condition or requirement, or Federal or State Order issued under the CWA (in particular, but not limited to, § 301(a), § 402(p), and § 505(a)(1)), as well as the failure to comply with requirements set forth in the Code of Federal Regulations and the North Coast Regional Water Quality Control Board ("RWQCB") Water Quality Control Plan or "Basin Plan".

The CWA requires that any Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto shall include sufficient information to permit the recipient to identify the following:

     **1.**       *The specific standard, limitation, or order alleged to have been violated.*

Based on information thus far received, CEPA believes pollutants are discharged from the alleged Soil manufacturing activities at the site, including but not limited to, total suspended solids, pH, chemical oxygen demand, biochemical oxygen demand, potassium, sulfate, oil and grease, lead, iron, and zinc. CEPA contends the Discharger previously had no individual facility NPDES permit for these discharges, and had failed to apply for coverage and comply with the General Industrial Storm Water Permit, NPDES Permit No. CA S000001, State Water Resources Control Board, Order No. 92-12-DWQ as amended by Order No. 97-03-DWQ ("General Permit"), for at least eighteen months after opening its Windsor facility.  The Discharger is in violation of the CWA's prohibition with regard to discharging a pollutant from a point source to a water of the United States, in this instance the Laguna de Santa Rosa and the Russian River, pursuant to CWA § 301(a), 33 U.S.C. § 1311(a) and 33 U.S.C. § 1365(f).

Even after obtaining coverage under the terms of the General Permit, the Discharger failed to prepare and implement a Stormwater Pollution Prevention Plan ("SWPPP"), failed to develop and implement a Monitoring and Reporting Program, and failed to implement Best Available Technology Economically Achievable ("BAT") and Best Conventional Pollutant Control Technology ("BCT") to control the discharge of pollutants in storm water at the Sonoma Soil Builders, LLC facility.

CEPA believe that these violations will continue until the Discharger implements a SWPPP and Monitoring and Reporting Program, and demonstrates (following sampling and testing following storm events) that its implementation of Best Management Practices ("BMPs") is effectively controlling storm and non-storm water discharges from the site.

     **2.**       *The activity alleged to constitute a violation.*

Operations at Sonoma Soil Builders, LLC site include a broad range of alleged soil storage, soil blending and manufacturing activities. The work, covered under Standard Industrial Code ("SIC") 0711 (Soil Preparation Services) and 2875 (Fertilizers, Mixing only) is conducted solely outdoors. The outdoor work takes place on a site that slopes toward one or more storm drains and the waters of the Laguna de Santa Rosa and the Russian River.  Both the storm drains and the navigable waters of

the Laguna de Santa Rosa and the Russian River are in close proximity to the respective site. Because the property on which the site is located is subject to rain events, the range of pollutants identified above can discharge to the Laguna de Santa Rosa and the Russian River.

To properly regulate these activities and control the discharge of these types of pollutants, the State Water Resources Control Board requires industrial facilities to obtain an individual NPDES permit or seek coverage under the General Permit (or obtain exemption under the terms of the General Permit from its requirements), and to comply with all terms of said permit. Review of the public record by CEPA reveals that the Discharger did not apply for the required permit coverage under the CWA for the facility until approximately October 14, 2014, well after CEPA submitted its first Notice of Intent to Sue in June of 2014.

Furthermore, Sonoma Soil Builders, LLC does not have a current and properly prepared Storm Water Pollution Prevention Plan (SWPPP) on file with the North Coast Regional Water Quality Control Board.

3.   *The person or persons responsible for the alleged violation.*

The entity responsible for the alleged violations is Sonoma Soil Builders, LLC (referred to herein as "the Discharger"), including those of its parent companies, owners, operators and employees responsible for compliance with the CWA.

4.   *The location of the alleged violation.*

The locations of the point sources from which the pollutants identified in this Notice are discharged in violation of the CWA are the permanent addresses of Sonoma Soil Builders, LLC facility at 5900 Pruitt Avenue in Windsor, California, and include the adjoining navigable waters of the Laguna de Santa Rosa and the Russian River, respectively - both waters of the United States.

5.   *The date or dates of violation or a reasonable range of dates during which the alleged activity occurred.*

The range of dates covered by this Notice is from at least April 20, 2013, until at least January 31, 2015. CEPA may from time to time update this Notice to include all violations which occur after the range of dates covered by this Notice. Some of the violations are continuous in nature; therefore each day constitutes a violation.

6.   *The full name, address, and telephone number of the person giving notice.*

The entity giving notice is California Environmental Protection Association, 930 Shiloh Rd. Bldg #39 Suite A, Windsor, CA 95492. CEPA is dedicated to protect, enhance and help restore the groundwater and surface water environs of California including, but not limited to, its rivers, creeks,

streams, wetlands, vernal pools, and tributaries. CEPA may be contacted via email through its attorneys.

CEPA has retained legal counsel with respect to the issues set forth in this Notice. All communications should be addressed to:

> *Hans W. Herb, Esq.*
> *The Law Office of Hans W. Herb*
> *P.O. Box 970*
> *Santa Rosa, CA 95402*
> *Tel. 707-576-0757*
> *Fax. 707-575-0364*
> *Email: hans@tankman.com*

## STATUTORY BACKGROUND

CWA § 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless such discharge is in compliance with various enumerated sections of the Act. Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an individual NPDES permit or a general NPDES permit issued pursuant to CWA § 402(p), 33 U.S.C. § 1342. CWA § 402(p), 33 U.S.C. § 1342(p), establishes a framework for regulating storm water discharges under the NPDES program. States with approved NPDES permitting programs are authorized under this section to regulate storm water discharges through permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all storm water dischargers. Pursuant to CWA § 402, the Administrator of the U.S. EPA has authorized California's State Water Resources Control Board to issue NPDES permits, including general NPDES permits in California.

The State Water Resources Control Board elected to issue a statewide general permit for industrial discharges, and issued the General Permit on or about November 19, 1991, modified the General Permit on or about September 17, 1992, and reissued the General Permit on or about April 17, 1997, pursuant to CWA § 402(p).

In order to discharge storm water lawfully in California, industrial dischargers must comply with the terms of the General Permit or have obtained an individual NPDES permit and complied with its terms.

The General Permit contains certain absolute prohibitions. Discharge Prohibition Order Section A(l) of the General Permit prohibits the direct or indirect discharge of materials other than storm water ("non-storm water discharges"), which are not otherwise regulated by a NPDES permit, to waters of the United States. Discharge Prohibition Order Section A(2) prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance.

Receiving Water Limitation Order Section C(l) prohibits storm water discharges to any surface or groundwater that adversely impacts human health or the environment.  Receiving Water Limitation Order Section C(2) prohibits storm water discharges that cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Water Quality Control Board Basin Plan.

In addition to absolute prohibitions, the General Permit contains a variety of substantive and procedural requirements that dischargers must meet.  Facilities discharging, or having the potential to discharge, storm water associated with industrial activity that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing a NOI. The General Permit requires existing dischargers to file NOIs before March 30, 1992.

Dischargers must also develop and implement a SWPPP which must comply with the standards of BAT and BCT.  The SWPPP must, among other requirements:

•       Identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm and non-storm water discharges from the facility and identify and implement site-specific BMPs to reduce or prevent pollutants associated with industrial activities in storm water and authorized non-storm water discharges [Permit Section A(2)]. BMPs must implement BAT and BCT [Permit Section B(3)].

•       Include a description of individuals and their responsibilities for developing and implementing the SWPPP [Permit Section A(3)]; a site map showing the facility boundaries, storm water drainage areas with flow pattern and nearby water bodies, the location of the storm water collection, conveyance and discharge system, structural control measures, impervious areas, areas of actual and potential pollutant contact, and areas of industrial activity [Permit Section A(4)]; a list of significant materials handled and stored at the site [Permit Section A(5)]; and, a description of potential pollutant sources including industrial processes, material handling and storage areas, dust and particulate generating activities, and a description of significant spills and leaks, a list of all non-storm water discharges and their sources, and a description of locations where soil erosion may occur [Permit Section A(6)].

•       Include a narrative assessment of all industrial activities and potential pollutant sources at the facility [Permit Section A(7)]. Include a narrative description of the BMPs to be implemented at the facility for each potential pollutant and its source, and consider both non-structural BMPs (including "Good Housekeeping") and structural BMPs where non-structural BMPs are not effective [Permit Section A(8)].

•       Conduct one comprehensive site compliance evaluation by the facility operator in each reporting period (July 1- June 30), with SWPPP revisions made, as appropriate, and implemented within 90 days of the evaluation [Permit Section A(9)].

Sonoma Soil Builders
Notice of Intent to Sue
April 30, 2015
Page 6

The General Permit requires dischargers to eliminate all non-storm water discharges to storm water conveyance systems other than those specifically set forth in Special Condition D(l)(a) of the General Permit and meeting each of the conditions set forth in Special Condition D(l)(b).

As part of their monitoring program, dischargers must identify all storm water discharge locations that produce a significant storm water discharge, evaluate the effectiveness of BMPs in reducing pollutant loading, and evaluate whether pollution control measures set out in the SWPPP are adequate and properly implemented. Dischargers must conduct visual observations of these discharge locations for at least one storm per month during the wet season (October through May) and record their findings in their Annual Report [Permit Section B(14)].

Dischargers must also collect and analyze storm water samples from at least two storms per year in compliance with the criteria set forth in Permit Section B(5). Dischargers must also conduct dry season visual observations to identify sources of non-storm water pollution in compliance with Permit Section B(7).

Permit Section B(14) of the General Permit requires dischargers to submit an "Annual Report" by July 1 of each year to the executive officer of the relevant Regional Water Quality Control Board. Permit Section A(9)(d) of the General Permit requires the dischargers to include in the annual report an evaluation of the dischargers' storm water controls, including certifying compliance with the General Permit. *See also* Permit Sections C(9), C(10) and B(14).

The EPA has established Parameter Benchmark Values ("EPA Benchmarks") as guidelines for determining whether a facility discharging storm water has implemented the requisite BAT and BCT. (65 Fed. Reg. 64746, 64767 (Oct. 30, 2000)). California Toxics Rule limitations are also applicable to all non-storm water and storm water discharges. (40 C.F.R. part 131). The RWQCB has established applicable water quality standards. This Basin Plan includes a narrative toxicity standard and a narrative oil and grease standard. The Basin Plan provides that "[waters shall not contain suspended material in concentrations that cause nuisance or adversely affect beneficial uses." The Basin Plan establishes limits on metals, solvents, pesticides and other hydrocarbons.

## SPECIFIC VIOLATIONS

CEPA contends as follows:

1.      Between at least April 20, 2013 and October 14, 2014, the Discharger violated the CWA, the RWQCB's Basin Plan and the Code of Federal Regulations by reason of discharging pollutants to waters of the United States without an individual NPDES permit.

2.      Between at least April 20, 2013, and the present, the Discharge has been operating without compliance with the General Permit, or in substantial and material violation of the General Permit.

3.      To date, the Discharger has failed to develop, implement and submit to the Regional Water Quality Control Board for approval, an appropriate Storm Water Pollution Prevent Plan (SWPPP), in violation of the Board's Order No. 97-03-DWQ.

4.      The Discharger provided misleading and/or false information on its Notice of Intent to Comply with the Terms of the WQ Order No. 97-03-DWQ, submitted on October 14, 2014, including that it listed an inaccurate SIC code. A SIC Code of 46 was listed on its Industrial Permit application form, which is "Pipelines, except natural gas." CEPA believes that the accurate SIC codes relative to the Discharge operations at the Windsor facility are 2875 and 0711, based on Sonoma Soil Builders' primary income stream.

5.      The Discharger provided misleading and/or false information on its Notice of Intent to Comply with the Terms of the WQ Order No. 97-03-DWQ, submitted on October 14, 2014, including that the Discharger indicated that its facility's storm water discharges were entirely contained within a "closed system" and that no discharges ever left the Discharger's property. Several CEPA associates and others personally observed the facility's storm water discharges flowing into a tributary of Pool Creek, which eventually flows into the Russian River. There is no "closed loop" system at the facility.

6.      CEPA further contends that the Discharger failed to report the above-referenced storm water dischargers and further failed to implement best management practices (BMPs) to contain said discharges. In fact, an inspector for the North Coast Regional Quality Control Board visited the site on or about November 18, 2014, and determined that the facility had "deficient BMP implementation." Specifically, Paul Kieran noted that numerous uncovered piles were sitting directly within the facility's storm water drainage system, and that attempts to block drop inlets and put K-rails along the southern edge of feedstock piles had created a "lake" all around the piles. The feedstocks were leaching into the standing water, which he noted drained through the storm drain system.

7.      On December 2, 2014, Paul Kieran re-inspected the facility and noted that while some of the soil amendment piles had been covered, other remained uncovered. He indicated that gutters needed to be placed on an adjacent building that had been supplying much of the run-on storm water which was creating the water quality concern. CEPA believes that the Discharger has failed to implement this required remedial measures.

8.      CEPA also believes that the Sonoma Soil Builders, LLC facility in Windsor is neither properly bermed, nor operated to ensure that storm and non-storm water discharges are properly contained, controlled, and/or monitored.

9.      In addition, CEPA believes the Discharger has provided additional false information to regulators in connection with its industrial storm water activities and has had other violations that can only be fully explored once discovery and investigation has been completed.  Hence, to the extent possible, CEPA includes such violations in this Notice and reserves the right to amend this Notice, if necessary, to include such further violations in future legal proceedings.

The violations discussed herein, impacting the Laguna de Santa Rosa and the Russian River, are derived from eye witness reports and records publicly available, or from records in the possession and control of the Discharger. Furthermore, CEPA contends these violations are continuing. Halting the discharge of pollutants to these important regional waterways is critical if they are to sustain both maritime and natural habitats for bird, animal, and plant life.

**REMEDIAL MEASURES REQUESTED**

CEPA believes that implementation of the following remedial measures are necessary in order to bring the Discharger into compliance with the CWA and reduce the biological impacts of its non-compliance upon public health and the environment surrounding the Sonoma Soil Builders, LLC facility.

1.      Prohibition of the discharges of pollutants including, but not limited to total suspended solids, pH, chemical oxygen demand, biochemical oxygen demand, potassium, sulfate, oil and grease, lead, iron, and zinc from the soil manufacturing operations at the facilities.

2.      Compliance with the terms and conditions of the General Permit, and BMPs detailed in the EPA's "Industrial Stormwater Fact Sheet."

3.      Compliance with the storm water sampling, monitoring and reporting requirements of the General Permit.

4.      Sampling of storm water at least four (4) times per year over each of the next five (5) years: at "first flush"; the first significant rain after "first flush"; the first significant rain after April 1; and the second significant rain after April 1.

5.      100% of the discharge from the Sonoma Soil Builders, LLC facility must be discharged through discrete conveyances.

6.      Any discharge from the Sonoma Soil Builders, LLC facility to waters of the United States must be sampled during the four (4) sampling events identified in paragraph #4 above.

7.      Preparation and submittal to the RWQCB of a "Reasonable Potential Analysis" for the Sonoma Soil Builders, LLC site and their operations.

8.   Preparation of an updated SWPPP for the site, including a monitoring program, with a copy provided to CEPA.


**CONCLUSION**

CWA §§ 505(a) (1) and 505(f) provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for unpermitted discharges of pollutants. 33 U.S.C. §§ 1365(a) (1) and (f), § 1362(5). An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to $37,500 per day/per violation for all violations pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365. *See also* 40 C.F.R. §§ 19.1-19.4.

The violations set forth in this Notice affect the health and enjoyment of members of CEPA who reside and recreate in the affected communities. Members of CEPA use the affected watersheds for recreation, sports, fishing, swimming, hiking, photography, nature walks and the like. Their health, use and enjoyment of this natural resource are specifically impaired by the Discharger's violations of the CWA as set forth in this Notice.

CEPA believes this Notice sufficiently states grounds for filing suit. At the close of the 60-day notice period, or shortly thereafter, CEPA has cause to file a citizen's suit under CWA § 505(a) against the Discharger for the violations of the CWA identified and described in this Notice. During the 60-day notice period, CEPA is willing to discuss effective remedies for the violations identified in this Notice. However, if the Discharger wishes to pursue such discussions in the absence of litigation, it is suggested those discussions be initiated soon so that they may be completed before the end of the 60-day notice period. CEPA does not intend to delay the filing of a lawsuit if discussions are continuing when the notice period ends.

Very truly yours,


LAW OFFICES OF HANS W. HERB



Hans W. Herb

Sonoma Soil Builders
Notice of Intent to Sue
April 30, 2015
Page 10

Copies to:

Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812-0100

Eric Holder, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Regional Administrator
U.S. EPA – Region 9
75 Hawthorne Street
San Francisco, CA, 94105

Executive Officer
North Coast Regional Water Quality Control Board
5550 Skylane Boulevard, Suite A
Santa Rosa, CA 95403